UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

LEONOR SARABIA-RAMIREZ,

Defendant.

No. 1:14-cr-00226-DAD-BAM-3

ORDER DENYING DEFENDANT LEONOR SARABIA-RAMIREZ'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)

(Doc. Nos. 232, 244)

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Leonor Sarabia-Ramirez. (Doc. Nos. 232, 244.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On March 5, 2018, defendant Sarabia-Ramirez entered a plea of guilty to one count of conspiracy to distribute at least 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Doc. Nos. 118, 122.) On August 23, 2018, the court sentenced defendant to a term of imprisonment of 160 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by 60 month term of supervised release, to become

unsupervised if the defendant is deported. (Doc. No. 159 at 2–3.) The court also imposed the mandatory $100.00 special assessment. (*Id.* at 6.)

Defendant is currently serving her sentence at Federal Correctional Institution Dublin ("FCI Dublin") in Dublin, California. (Doc. Nos. 244 at 3; 247 at 5.) As of the date of this order and including prior jail credit time, defendant Sarabia-Ramirez has served approximately 83 months of her 160-month sentence. (Doc. Nos. 247 at 5; 247-1 at 3–4.) Accounting for good time credit, her projected release date is February 10, 2026. (Doc. No. 247-1 at 2.)

On March 24, 2021, defendant filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 232.) On March 26, 2021, the court referred defendant's *pro se* motion to the Federal Defender's Office. (Doc. No. 233.) On June 21, 2021, appointed counsel filed a supplemental motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Sarabia-Ramirez. (Doc. No. 244.) The government filed its opposition to the pending motion on July 6, 2021, and defendant filed a reply thereto on July 19, 2021. (Doc. Nos. 247, 253.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018).

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a

/////

> motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

---

acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A. Administrative Exhaustion**

In this case, the parties agree that defendant has exhausted her administrative remedies prior to filing her pending § 3582 motion. (Doc. Nos. 244 at 3; 247 at 5–6.) Specifically, defendant Sarabia-Ramirez submitted a written request for compassionate release to the warden of FCI Dublin on August 24, 2020, and the warden denied that request on November 4, 2020.[4] (*Id.*) Accordingly, the court will turn to the merits of defendant's motion.

**B. Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical

---

[4] Neither party addresses whether the defendant was required to appeal the warden's denial in order to exhaust her administrative remedies. *See* 28 C.F.R. § 542.15(a). Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense which must be pled and proven, the court will accept the government's concession and will address the merits of defendant's motion.

conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp.

3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

Defendant Sarabia-Ramirez argues that extraordinary and compelling reasons warranting a reduction of her custodial sentence exist because: (1) her age, race, and health conditions, according to some studies and the U.S. Centers for Disease Control and Prevention ("CDC"), place her at a high risk of suffering severe illness from COVID-19; and (2) she cannot take measures to self-care during the pandemic while incarcerated at FCI Dublin. (Doc. No. 244 at 3–5, 7–8.) Specifically, defendant asserts that she suffers from obesity with a Body Mass Index (BMI) of 44.9 and has Vitamin D deficiency, "a condition that disrupts calcium absorption, which is integral in supporting the nervous, muscle, and immune systems." (*Id.* at 3, 8.) Defendant asserts that the CDC identifies a BMI greater than 30 and a weakened immune system as COVID-19 risk factors. (*Id.* at 3–4, 9.) Defendant also contends that her age of 54 places her in an "age group vulnerable to a higher risk of severe illness" from COVID-19, citing studies conducted by the CDC and the Intensive Care National Audit and Research Center in London that show the risk for severe illness from COVID-19 increases with age. (*Id.* at 4.) Defendant further contends that,

[5] Here, however, because defendant Sarabia-Ramirez is only 54 years old (Doc. No. 244 at 4), her age and age-related factors do not play a role in consideration of her pending motion.

because she is Latina, she belongs to a group "especially vulnerable to severe illness" because studies have shown that Latino communities have been disproportionately affected by the pandemic. (*Id.* at 4–5.)

Defendant also asserts that in light of her medical conditions, the conditions of her confinement at FCI Dublin "increase the risk of infection" and render her unable to provide self-care during the pandemic. (*Id.* at 7–8.) In her motion for compassionate release, defendant notes that, at the time of filing, FCI Dublin reported one inmate with an active positive COVID-19 test. (*Id.* at 7.) Defendant contends that the "the racial and ethnic composition of the BOP prison population mirrors the social determinants of health that put racial and ethnic minority groups at increased risk" of severe illness from COVID-19, including "chronic and toxic stress and poor health care." (*Id.*) Further, defendant contends that self-care is impossible because she "has no control over her environment . . . her diet or the cleanliness of her environment." (*Id.* at 8.) She emphasizes that she has gained weight due to restrictive confinement conditions rendering her unable to exercise for over a year during the pandemic. (*Id.*)

In its opposition to the pending motion, the government argues that defendant Sarabia-Ramirez has failed to carry her burden of establishing her eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where she is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief, and because defendant's health conditions do not rise to the level of "extraordinary and compelling reasons" required for compassionate release. (Doc. No. 247 at 8–9.) While the government does not dispute that defendant suffers from obesity and vitamin D deficiency, it contends that defendant is currently receiving treatment from BOP medical staff for these conditions. (*Id.*) Importantly, the government notes that defendant has been fully vaccinated against COVID-19, such that "[t]here is nothing extraordinary and compelling about [defendant] Sarabia-Ramirez's circumstances" to warrant compassionate release. (*Id.* at 9–10.)

In reply, defendant contends that her vaccination status does not preclude compassionate release because vaccinated individuals may still contract COVID-19. (Doc. No. 253 at 1–3.) Defendant reiterates her concerns that her age and inability to control her environment while

incarcerated place her at a higher risk for contracting COVID-19. (*Id.* at 2–3, 6.)

The court concludes that defendant has failed to show the existence of extraordinary and compelling reasons calling for her release from confinement. It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical conditions, including obesity as defined by a BMI over 30, may be "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021); (Doc. Nos. 244 at 3; 247 at 8). Here, defendant's medical records show that she has a BMI of 43 and that she has been diagnosed with vitamin D deficiency. (Doc. No. 251 at 28—sealed.) But defendant does not dispute that her medical records also reflect that she is receiving treatment and monitoring of her conditions by medical staff at FCI Dublin. (*Id.* at 16, 48, 50.) *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (noting that relevant questions include the adequacy of the care and treatment being provided to the defendant given his pre-existing conditions and concluding that there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling). Although defendant asserts in conclusory fashion that she cannot control her environment in prison and that those conditions of confinement place her at risk of infection (Doc. Nos. 244 at 7–8; 253 at 5–6), she has not provided any evidence regarding the conditions that she is currently facing at FCI Dublin, or the ways in which she is unable to provide self-care at that prison as a result of those conditions beyond the contention that she cannot exercise while under pandemic-related lockdowns.

Further, as of the date of this order on October 30, 2021, the BOP reports that, of the 727 total inmates currently at FCI Dublin, only one inmate and one staff at FCI Dublin have tested

/////

/////

positive with active cases of COVID-19.[6] *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited October 30, 2021); FCI Dublin, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/dub/ (last visited Sept. 14, 2021). The BOP also reports that since vaccination efforts have begun, 753 total inmates have received a COVID-19 vaccine and are fully inoculated. Federal Bureau of Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited September 14, 2021).

Indeed, defendant received her second dose of the Moderna vaccine on May 18, 2021. (Doc. Nos. 251 at 32—sealed.) Because more than two weeks have passed since receiving her second dose, defendant is now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last updated Sept. 1, 2021). Here, defendant is seeking her release from prison based on the argument that she will suffer a severe illness if she were to contract COVID-19. According to the CDC, authorized vaccines in the U.S., including the Moderna vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 27, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals, like defendant Sarabia-Ramirez, are very well protected against becoming severely ill from COVID-19. *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL

---

[6] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

2179256, *3-4 (D. Ore. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Barajas-Guerrero*, No. 1:17-cr-00148-NONE, 2021 WL 1839728, at *6 (E.D. Cal. May 7, 2021); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, 519 F.Supp.3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

In light of all of the above, the court concludes that defendant Sarabia-Ramirez has not met her burden of demonstrating extraordinary and compelling reasons for her compassionate release under § 3582 (c)(1)(A). Therefore, her motion for compassionate release will be denied.

**C. Consistency With the § 3553(a) Factors**

Finally, even if defendant's motion was supported by a showing of extraordinary and compelling reasons for her compassionate release, the undersigned at this time is not yet persuaded that the requested reduction in her sentence would be consistent with consideration of

/////

/////

/////

the sentencing factors set forth at 18 U.S.C. § 3553(a).[7] *See Parker*, 461 F. Supp. 3d at 979.

Defendant Sarabia-Ramirez contends that a reduction of her sentence is consistent with consideration of the § 3553 sentencing factors because "she does not present a danger to the community." (Doc. No. 244 at 10.) Defendant notes that her offense of conviction, conspiracy to distribute methamphetamine, did not involve violence and that her age of 54 years makes her a low risk for recidivism. (*Id.* at 10–11.) Defendant also contends that she has had adequate time in BOP custody for rehabilitation as demonstrated by her completion of over a dozen educational courses during her confinement and lack of a prison disciplinary record. (*Id.* at 11; Doc. No. 244-1 at 22–23; Doc. No. 253 at 9.) She contends that because she no longer needs to provide for her now-adult children, her changed family circumstances also decrease her risk of recidivism. (*Id.*) Although defendant's proposed release plan contemplates living with her family in Modesto, California, defendant acknowledges that she has an immigration detainer and asserts that she "will not contest any deportation efforts should she be released to ICE custody upon grant of compassionate release." (*Id.* at 14, 16.)

The government counters that consideration of the § 3553(a) sentencing factors do not support a shortened sentence here due to the seriousness of defendant's offense of conviction and her criminal history. (Doc. No. 247 at 11.) The government emphasizes defendant's prior felony conviction for importation of marijuana and her return to the United States without legal status after having previously been deported. (*Id.*) The government also contends that defendant "demonstrated specialized knowledge and skill in processing and distributing methamphetamine"

---

[7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

while committing her offense of conviction. (*Id.*) It notes that defendant's role in the conspiracy involved assisting her co-defendants in the process of converting liquid methamphetamine into finished crystal methamphetamine, distributing the methamphetamine, and arranging for the drug proceeds to be returned to Mexico. (*Id.* at 2.) During a search of defendant's residence, 15,383 grams of methamphetamine and solution containing 39 kilograms of methamphetamine was seized. (*Id.* at 4.) The government contends that defendant's offense of convictions, her criminal history, and the need for just punishment weigh against granting compassionate release.

In reply, defendant Sarabia-Ramirez contends that she has served "a substantial portion of her sentence" such that compassionate release would be appropriate. (Doc. No. 253 at 6–8.) Although defendant does not dispute the serious nature of her offense of conviction, she contends that "it does not reflect or portend violence" and that she was a "neutral participant in the conspiracy" to distribute methamphetamine. (*Id.* at 9.)

As noted above, defendant Sarabia-Ramirez is currently serving a 160-month sentence of imprisonment for conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (Doc. No. 159 at 2–3.) At the time of her sentencing, defendant was held responsible for 1,087 kilograms of methamphetamine (ice), 145.9 kilograms of actual methamphetamine, and a half-pound of heroin. (Doc. No. 131 at 8.) Taking into account defendant's early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level in this case was 39, based largely on the significant amount of methamphetamine involved in her offense, defendant's use of a residence as a "methamphetamine conversion laboratory, as well as a methamphetamine storage site for subsequent distribution," and the seizure of firearms as well as methamphetamine, drug processing equipment, and heroin from defendant's residence. (*Id.* at 8–9.) Although defendant also had a prior federal felony conviction for the importation of marijuana in 1998, it was determined that her criminal history was I. (*Id.* at 9–10.) Given defendant's total offense level of 39 and criminal history of I, the advisory sentencing guideline range called for a term of imprisonment of between 262 and 327 months, and the probation officer recommended a low-end guideline sentence of 262 months in BOP custody. (*Id.* at 18.) The undersigned relied upon its careful consideration of the same

§ 3553(a) factors in varying downward from probation's recommendation and imposed a 160-month term of imprisonment. (Doc. No. 159.)

The court is not persuaded that a reduction in defendant Sarabia-Ramirez's already arguably lenient sentence would be consistent with the appropriate consideration of the § 3553(a) sentencing factors. First, although defendant points to her completion of BOP programming and her lack of disciplinary record to demonstrate that she has been rehabilitated (Doc. No. 244 at 11; Doc. No. 244-1 at 22–23; Doc. No. 253 at 9), rehabilitation alone is not enough alone to warrant compassionate release. *See* 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13 cmt. n.3.

Furthermore, even if the court were to credit defendant's current belief that she will not reoffend, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant has served only approximately 50% of the 160-month sentence imposed. (*See* Doc. No. 247-1 at 3.) In the court's view, considering that defendant already received a well below-guideline range sentence, a reduction of defendant's 160-month sentence would not adequately reflect the seriousness of her offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing her sentence to time served[8] would not be consistent with the § 3553(a) sentencing factors.

---

[8] Defendant requests that the court either reduce her sentence to time served or amend the conditions of her supervised release to require her to serve what would have been the remaining portion of her custodial term in home confinement. (Doc. No. 244 at 16.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. §

## CONCLUSION

Because defendant Sarabia-Ramirez has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of her sentence under 18 U.S.C. § 3582 (c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), her motion for compassionate release (Doc. Nos. 232, 244) is denied.

IT IS SO ORDERED.

Dated: **October 30, 2021**

UNITED STATES DISTRICT JUDGE

3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" but rather the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce her sentence to one of time served (i.e., 83 months) and modify the conditions of supervised release to require home confinement for the remainder of her term. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Sarabia-Ramirez in a custodial setting. If the BOP determines that the defendant should be released to home confinement to serve her sentence under the Attorney General's expanded authority in that regard (*see* fn. 2, above), the court trusts it will do so. The court notes that according to the BOP, defendant Sarabia-Ramirez is eligible to serve the remainder of her sentence in home detention beginning August 10, 2025. (Doc. No. 247-1 at 3.) The court will go so far to say that it not opposed to defendant's designation to home confinement as soon as she is deemed eligible by the BOP. However, the issue the court resolves in ruling on the pending motion is only whether in its view, under the applicable legal standards, defendant's sentence should be reduced.